NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Plaintiff,

v.

S.S. INDEPENDENCE, her engines, tackle, apparel, appurtenances, etc. in rem, Great Hawaiian Properties Corporation, in personam, The Delta Queen Steamboat Co., in personam, Defendants.

GREAT HAWAIIAN PROPERTIES CORPORATION, Counterclaimant,

v.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Counterdefendant,

Tenneco, Inc., Third Party Defendant.

Civ. A. No. 4:94cv148.

United States District Court, E.D. Virginia, Newport News Division.

Dec. 13, 1994.

---

Denham Arthur Kelsey, Gregory N. Stillman, Hunton & Williams, Norfolk, VA, for Newport News Shipbuilding and Dry Dock Co.

Benjamin T. Riddles, II, Julian F. Hoffar, Watt, Tieder & Hoffar, McLean, VA, for Great Hawaiian Properties Corp., in personam, d/b/a American Hawaii Cruises, Delta Queen Steamboat Co., in personam.

## ORDER

DOUMAR, District Judge.

This matter comes before the Court on defendants' motion to vacate the arrest of the S.S. Independence in the *in rem* action named above. For the reasons outlined below, defendants' motion is **DENIED.**

### Factual and Procedural Background

In or around March, 1994, defendants began seeking bids for repair work on the S.S. Independence, a cruise ship registered in the United States. Prior to submitting its bid, plaintiff did several shipchecks of the Independence to ascertain the nature and extent of the work necessary, and ultimately submitted a bid of $19,923,889.00, on or about April 4, 1994. Because the bid exceeded the amount budgeted for the project, defendants reduced the scope of the work to be done on the Independence. Plaintiff was hired to do the work at a contract price of $12,428,500.00, pursuant to a Renovation Contract dated April 29, 1994. Both Tenneco, Inc., plaintiff's parent corporation, and The Delta Queen Steamboat Co. (now "American Classic Voyages Co."), defendants' parent, issued guaranties for the performance of each of their subsidiaries under the Renovation Contract.

The Renovation Contract required (1) that the Independence be delivered to dry dock in Newport News on or before July 19, 1994, and (2) that work be completed on the Independence by September 21, 1994, so that defendants could meet its cruise obligations in the month of October. The contract also stipulated that time was of the essence. On July 18, 1994, defendants delivered the Independence to plaintiff. Almost immediately, plaintiff alleges, the shipowner began issuing change orders; ultimately, plaintiff contends, about 500 change orders were logged. Defendants counter that the contract required plaintiff to perform all essential changes, and all nonessential changes that would not impact upon the redelivery date for the vessel, and that therefore such orders were contemplated in the Renovation Contract.

On October 4, 1994, plaintiff filed a complaint with this court. In Count I of the complaint, the plaintiff lodged a claim for $29,756,090.00 *in rem* against the S.S. Independence for repairs constituting maritime necessaries within the meaning of the Federal Maritime Lien Act under general maritime law. In Count II, an action *in personam* for breach of contract, the plaintiff alleged that with changes, plaintiff performed more than $29,765,090.00 worth of work on the Independence. Plaintiff alleged that these changes were so substantial as to constitute a cardinal change in the Renovation Contract—the equivalent of a breach of the contract by defendants.

Plaintiff also contended that defendants refused to pay the 95% of the base contract price due at the time the complaint was filed. Plaintiff asked the Court for an *in rem* maritime lien and arrest of the Independence. Plaintiff further requested that the Court assert jurisdiction over the *in personam* breach of contract action against the shipowner, but that the claim be stayed pending arbitration of the dispute pursuant to an arbitration requirement in the Renovation Contract.

On October 4, 1994, this Court issued an arrest order for the S.S. Independence, and appointed plaintiff substitute custodian for the Independence. On October 7, 1994, the Court ordered the Independence released predicated on the Undertaking in Lieu of Arrest signed by the parties, which, pursuant to Local Rule of Admiralty (c)(1), substituted the sum of $29,756,090.00 (placed in escrow) for the vessel. On October 27, 1994, defendants filed a motion to vacate the appoint-

ment of substitute counsel and the order substituting Local Rule (c)(1) undertaking for the vessel under arrest, or in the alternative, for substitute or reduced security.

On November 2, 1994, because defendants had not filed their responsive pleadings, plaintiff petitioned the court for a default judgment. On November 3, 1994, a default was entered against defendants. However, defendants' answer was also filed (subject to defect) on November 3, 1994.[1] On that same day, defendants filed a counterclaim against plaintiff and a third party complaint against Tenneco, Inc., plaintiff's parent corporation. On November 9, 1994, the Court heard defendants' motion to vacate the arrest of the S.S. Independence, or, in the alternative, to lower the amount of the security held in escrow. The Court lowered the security from $29,756,090.00 to $20,000,000.00 and reserved judgment on the motion to vacate the arrest, and specifically, on the issue of whether plaintiff was entitled to a maritime lien. That motion is now ripe for consideration by the Court.

### Analysis

### 1. Motion to Vacate Arrest

■ Rule E(4)(f) of the Supplemental Federal Rules of Civil Procedure for Admiralty and Maritime Claims governs the procedure for release from arrest. It states in relevant part, "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated...."

The parties agree that the plaintiff carries the burden of showing that the arrest should not be vacated, but differ on the onerousness of that standard. Defendants cite *Marubeni America Corp. v. M/V UNITY*, 802 F.Supp. 1353, 1356 (D.Md.1992), as standing for the proposition that plaintiff bears a heavy burden. While the court in *Marubeni* recognized the hardship that an arrest of the vessel placed on the shipowner, and stated that "the party seeking to arrest a vessel must carry the burden of showing why the

arrest or attachment should not be vacated," the court did not explicitly state that the burden was a heavy one. The court said only that the burden must be carried by the plaintiff.

Plaintiff argues that the plaintiff need only show "probable cause" to arrest. *See Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 912 (4th Cir.1981). In *Mujahid v. M/V Hector*, 1991 WL 254121, at *1–2, 1991 U.S.App. LEXIS 28445, *4 (4th Cir.1991) (unpublished opinion), the Fourth Circuit adopted the reasoning of the Third Circuit in *Salazar v. "Atlantic Sun"*, 881 F.2d 73, 79 (3d Cir.1989), explaining that at a post-arrest hearing, the plaintiff need only show reasonable grounds for obtaining an arrest warrant for a vessel. The reasonable grounds/probable cause standard translates roughly to requiring that plaintiff show entitlement to a maritime lien. *Amstar Corp.*, 664 F.2d at 912.

This Court agrees that plaintiff need show only probable cause for arrest of a vessel, and will evaluate the arrest of the S.S. Independence under that standard. To carry its burden, then, plaintiff must establish that it was entitled to a maritime lien, and that therefore it had reasonable grounds or probable cause to arrest the S.S. Independence.

### 2. Entitlement to Maritime Lien

■ Plaintiff asserts its entitlement to a maritime lien pursuant to the Maritime Lien Act, 46 U.S.C. § 31342(a), which states in relevant part,

> (a) ... a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
> (1) has a maritime lien on the vessel;
>
> (2) may bring a civil action in rem to enforce the lien; and
>
> (3) is not required to allege or prove in the action that credit was given to the vessel.

The term "necessaries" includes repairs, supplies, towage and the use of a dry dock or marine railway, and has been interpreted broadly to include any goods and services necessary for a vessel's continued operation.

---

1. Plaintiff's motion for default judgment was denied by the Court on December 5, 1994.

*Farrell Ocean Services, Inc. v. United States,* 681 F.2d 91, 92–93 (1st Cir.1982); 46 U.S.C. § 31301(4). The lien arises "from the moment of the service or occurrence that provides its basis." 1 T. Schoenbaum, *Admiralty and Maritime Law,* § 9–1, at 490 (2d ed. 1994); *Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 602 (5th Cir.), *cert. denied, Fred S. James & Co. v. Equilease Corp.,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986) (explaining that "[t]he lien arises when the debt arises...."); *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. CAMILLA,* 776 F.Supp. 1558, 1559 (S.D.Fla.1991), *aff'd* 966 F.2d 613 (11th Cir.1992) (stating that a maritime lien "arise[s] at the moment of repair to the vessel").

■ An action to enforce a maritime lien *in rem* against a vessel is distinct from an action for breach of contract brought against a shipowner *in personam.* The primary right at stake in the first is the right to be compensated for services rendered; in the second, it is the right to receive the benefit of one's bargain. *S.E.L. Maduro (Florida), Inc. v. M/V ANTONIO de Gastaneta,* 833 F.2d 1477, 1482 (11th Cir.1987). To enforce its maritime lien under Count I of the complaint against the S.S. Independence, then, plaintiff need not prove the elements of the breach of contract action. Instead, plaintiff must show:

(1) that plaintiff performed services on the vessel;

(2) that charges for those services were reasonable;

(3) that services were "necessaries," as defined by 46 U.S.C. § 31301(4); and

(4) that the person who placed the order had the real, apparent or statutorily presumed authority to do so.

*Id.*

■ First, it is undisputed that the plaintiff performed services on the vessel; defendants admit that at this juncture, they owe more than $13 million to the plaintiff for services rendered. *See* Defendants' Memorandum of Points and Authorities in Support

of Defendants' Motion to Vacate Order for Appointment of Substitute Custodian, and the Order Substituting Local Rule (c)(1) Undertaking for Vessel Under Arrest, Exhibit 19 (offering proffer of $13,619,257.00 payment for services rendered to the S.S. Independence); Transcript of Proceedings, November 9, 1994, at 14, 18–21. Second, "necessaries," as discussed above, include "repairs, supplies, towage, and the use of a dry dock or marine railway." Since this controversy centers around repairs provided to the S.S. Independence while in dry dock, it is clear that at least some necessaries were provided by the plaintiff. Third, it is undisputed that the agent for defendant Great Hawaiian Properties who placed the order had the authority to do so. Finally, the Court has some doubts as to whether the original amount claimed by the plaintiff, substituted for the vessel, and placed in escrow (more than $29 million) reflected reasonable charges for necessaries as required by parts 2 & 3 of the test (as part of that figure reflected profits and charges for delay, *see* Transcript of Proceedings, November 9, 1992, at 52–54, 63–66). Nonetheless, the Court finds that the reduced escrow of $20 million is, considering the scope of the work performed by the plaintiff, a reasonable amount to secure the necessary services performed and to substitute for the ship. Therefore, the Court finds that plaintiff has satisfied the test for showing entitlement to a maritime lien.

■ Defendants have raised a number of defenses to the enforcement of the statutory lien arising under the Renovation Contract, including lack of existence of a current debt, and failure to exhaust administrative procedures and remedies provided in the contract. Additionally, defendants assert that plaintiff waived its right to a maritime lien. As explained above, however, the contract claims are *in personam* claims and are distinct from the *in rem* claim contested here, and the contractual defenses are therefore inapplicable.[2] Only the waiver argument carries any weight.

---

**2.** Defendants rely heavily on *Veverica v. Drill Barge Buccaneer No. 7,* 488 F.2d 880 (5th Cir. 1974) to support their argument that plaintiff

had no right to enforce its lien until payment was due and owing and until contractual arrangements had been honored. Despite whatever

The Maritime Lien Act does not preclude the waiver of the right to obtain a lien. 46 U.S.C. § 31305. Waiver can be either express or by implication. *W.A. Marshall & Co. v. S.S. "President Arthur"*, 279 U.S. 564, 568, 49 S.Ct. 420, 421, 73 L.Ed. 846 (1929). However, "waiver is not favored, and the courts will require a clearly manifested intention to forgo the lien." 1 T. Schoenbaum, *Admiralty and Maritime Law,* § 9–7, at 512 (2d ed. 1994), citing *Nacirema Operating Co. v. The S.S. Al Kulsum,* 407 F.Supp. 1222 (S.D.N.Y.1975). In fact, "a presumption arises that one furnishing [necessaries] to a vessel acquires a maritime lien...." *Equilease,* 793 F.2d at 605; *General Electric Credit & Leasing Corp. v. Drill Ship Mission Exploration,* 668 F.2d 811, 814 (5th Cir.1982); *but see Itel Containers International Corp. v. Atlanttrafik Express Service Ltd.,* 982 F.2d 765, 768 (2d Cir.1992) ("As a general rule, maritime liens are disfavored by the law."). The party attacking the lien under a waiver theory bears the burden of presenting clear and affirmative proof that the lien was waived. *Ramsay Scarlett & Co., Inc. v. S.S. Koh Eun,* 462 F.Supp. 277, 285 (E.D.Va.1978).

Defendants contend that (1) plaintiff expressly waived its right to a lien in the Renovation Contract; (2) plaintiff impliedly waived its lien by accepting defendants' corporate guaranty for contract performance; and (3) plaintiff waived its right to a lien by failing to reserve that right when it contracted to accept defendants' corporate guaranty.

Part III, Section 6 of the Renovation Contract states,

> Shipyard shall discharge any and all liens asserted by suit or other filings against the Vessel by any vendor, subcontractor or employee of Shipyard for payment of any purchase price or wage for Contract Work items furnished by Shipyard, except any such liens as are contested in good faith by

Shipyard and for which Shipyard provides any required bond or other security.

The vice president of plaintiff Newport News Shipbuilding signed the complaint in this proceeding. Defendants characterize that action as a suit by an employee against the vessel, which must be discharged by plaintiff, as set forth in Part III, § 6 of the Renovation Contract. Going forward with obtaining the lien, defendants argue, is a breach of the contract. However, as the Court indicated during oral argument, to claim that a corporate officer acting on behalf of the corporation (for instance, by executing and authorizing the filing of a complaint) is acting on behalf of himself, as contemplated by Part III, § 6, of the Renovation Contract, is specious. The Court rejects the argument that plaintiff violated an express lien waiver by filing the complaint in this action.[3]

Secondly, defendants argue that plaintiff waived its lien by accepting defendants' corporate guaranty. In *S.S. "President Arthur",* the Supreme Court recognized that making alternative security arrangements could serve to waive a lien for necessaries. 279 U.S. at 570–71, 49 S.Ct. at 422. Citing that case, defendants assert that reliance on other sources to secure performance under the Renovation Contract also served to waive the lien.

However, it should be recognized that "... *The President Arthur* did not open the door very wide. Lienors have been favoured in the U.S. and in consequence a waiver of lien has required clear, overt acts, when it was not express." Tetley, *Maritime Liens and Claims,* at 510 (1985). Moreover, "... the taking of other security has usually not been held to be a waiver of the lien." *Id.* at 512. To overcome the presumption in favor of a lien, the defendant must show that the plaintiff relied solely on the corporate guaranty and took affirmative actions that manifested plaintiff's clear and purposeful intention to

---

weight this case may carry, however, defendants miss the crucial point: that the lien asserted by plaintiff is a statutory rather than a contractual lien, and that the provisions of the Renovation Contract, in the absence of a waiver of the right to a statutory lien, do not govern the operation of the statutory lien.

**3.** The Court makes no finding as to whether Part III, Section 6 of the Renovation Contract constitutes an express waiver of a maritime lien, for even if the section did waive contractual liens, plaintiff would still be entitled to a statutory lien, as discussed above.

**268**

forego the lien. *Equilease Corp.*, 793 F.2d at 606; *Farrell Ocean Services, Inc.*, 681 F.2d at 93–94; *General Electric Credit & Leasing Corp.*, 668 F.2d at 814. The Court finds that the acceptance of a corporate guaranty in this instance was standard procedure for both parties to this contract, and was not the type of clear, overt, and purposeful act necessary to waive a lien.

 Finally, defendants contend that because plaintiff has not expressly reserved the right to a lien, it has waived that right. Defendants rely on *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 277, 60 S.Ct. 937, 942, 84 L.Ed. 1197 (1940) to support this proposition. However, that case, in the course of summarizing an earlier case's holding, states only that where the right to a lien was expressly reserved, no waiver would be found. It does not require that plaintiff expressly reserve the right to a lien.

In fact, if the Court followed the defendants' logic, a ship repair facility would almost never be entitled to a maritime lien. In every instance in which necessaries are provided to a ship, an authorized individual must authorize the ship repair facility to provide services or make repairs. That authorization, whether oral or written, is necessarily a contract. Most contracts for the repair of vessels are small in nature and involve small shipyards which operate primarily on an oral basis and do not rely on written contracts prepared by experienced attorneys. If in every such contract the provider of services was required to expressly reserve its right to a maritime lien, the protections afforded by the Federal Maritime Lien Act would be eviscerated, especially in cases involving small ship repair operations like those described above. Accordingly, the Court rejects the defendants' argument that failure to expressly reserve the right to a maritime lien amounts to a waiver of the lien. The shipyard can waive such a right, but it must clearly and unequivocally do so.

Plaintiff has shown its entitlement to a maritime lien, and plaintiff therefore had probable cause to arrest the vessel. Defendants have not shown by clear and affirmative proof that plaintiff waived its right to a maritime lien. Therefore, the motion to vacate the arrest of the S.S. Independence is **DENIED.**

### Conclusion

The defendants' motion to vacate the arrest of the S.S. Independence is **DENIED.**

**IT IS SO ORDERED.**