**20TH CENTURY FOX FILM CORPORATION, Plaintiff,**

**v.**

**M.V. SHIP AGENCIES, INC., Defendant.**

**and**

**Sturgeon Atlantic, Ltd., as Claimant–Owner of M/V Sturgeon Atlantic.**

No. 97–109–Civ–J–99C(S).

United States District Court, M.D. Florida, Jacksonville Division.

March 17, 1997.

James F. Moseley, Jr., Jacksonville, FL, for 20th Century Fox Film Corp.

Alan B. Vlcek, Jacksonville, FL, for M.V. Ship Agencies.

### ORDER ON MOTION TO VACATE ATTACHMENT

CORRIGAN, United States Magistrate Judge.

This matter is before the Court on the Motion of Claimant/Owner, Sturgeon Atlantic, Ltd., a Cayman Island corporation, to Show Cause why a vessel attachment should not be vacated and the vessel released (Doc. # 18), filed February 21, 1997. The Court held a hearing on February 26, 1997. (Doc. # 20). While the Motion was under advisement, plaintiff filed a Motion for Supplemental Process of Attachment and Garnishment (Doc. # 24) and a Motion for Leave to Amend Amended Verified Complaint (Doc. # 27) on February 28, 1997. On March 3, 1997 the Court entered an Order Shortening Time to Respond to Motion to Amend and Motion for Supplemental Attachment and Requiring Plaintiff to Serve Defendant. (Doc. # 29). Plaintiff, defendant and claimant-owner all filed memoranda. (Docs.# 25, 28, 30). After reviewing the motions, memoranda, affidavits, and arguments of counsel at

the hearing, the Court is satisfied that the defendant could not be found within the district for the purposes of a Supplemental Rule B attachment; that plaintiff has established the attachment of the vessel was supported by reasonable grounds and that there was probable cause for the writ of attachment.

### I. Factual Background.

Plaintiff is a foreign corporation with its principal place of business in Los Angeles, California. (Doc. #8). Defendant M.V. Ship Agencies, Inc. (hereinafter "Ship Agencies") is a Florida corporation with its principal offices in Miami, Florida. (Doc. #18, Ex. "A"). Claimant/Owner Sturgeon Atlantic is a Grand Cayman corporation. (Doc. #17).

On February 10, 1997 plaintiff filed a verified complaint in admiralty (Doc. #1), asserting an action against Ship Agencies for breach of a maritime contract, specifically a Time Charter Agreement. (Exhibit "A" to the Complaint). The Complaint alleged that despite diligent search Ship Agencies could not be found in the Middle District of Florida and did not maintain an office in the district, but assets of Ship Agencies were located in the district, specifically a ship named the M/V Sturgeon Atlantic. (Paragraph 10). The Complaint requested attachment of the vessel pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure. Plaintiff's Motion for Process of Attachment and Garnishment (Doc. #3) was filed on February 10, 1997. As contemplated under the Rule, the Court held an ex parte hearing on February 11, 1997. (Doc. #7). At the hearing plaintiff filed an Amended Verified Complaint in Admiralty. (Doc. #8). Paragraph 4 of the Amended Verified Complaint contains plaintiff's verified allegations that "Ship Agencies is the owner/managing owner of the M/V Sturgeon Atlantic and has the power to possess, control and charter said vessel." The Amended Verified Complaint again alleged that "[d]espite a diligent search, defendant Ship Agencies cannot be located within this District, but assets of Defendant Ship Agencies (referring to the vessel) are located within this District and within the jurisdiction of this Court ..." (Paragraph 12). Based on the Amended Verified Complaint,

on February 11, 1997 the Court issued an Order directing the issuance of Process of Attachment and Garnishment (Doc. #10) on the vessel named "Sturgeon Atlantic" which was in dry dock in Jacksonville. The Summons and Writ of Attachment and Garnishment was then issued by the Clerk of the Court on February 14, 1997. (Doc. #14).

On February 21, 1997, a "Claim of Owner" was filed on behalf of Sturgeon Atlantic, Ltd., asserting it is the true owner of the Sturgeon Atlantic. (Doc. #17). The Claim also asserts that Sturgeon Atlantic, Ltd. is a Grand Cayman corporation and has no officers or directors within this district. (p. 2). The claim is signed by Miami counsel as attorney in fact.

### II. Ship Agencies could not be "found" in the district; therefore the attachment was proper.

■ Ship Agencies seeks to have the Court vacate its Order of attachment, alleging that it "could be found within the district", and therefore Supplemental Rule B(1) was improperly invoked. (Doc. #30).

■ Rule B(1) of the Supplemental Rules states:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees ... *if the defendant shall not be found within the district.* (emphasis supplied).

Citing Local Admiralty Rule 7.02(a), Ship Agencies and claimant/owner Sturgeon Atlantic argue that because their counsel asserted for the first time at the post-attachment hearing that he was authorized to receive and accept service of process in the Middle District of Florida for both Ship Agencies and Sturgeon Atlantic, attachment was (or would be under the request for supplemental attachment) improper, and that the presence of two individuals (Mr. O'Donnel who asserts he is the owner's representative and was amenable to service on behalf of both Ship Agencies and Sturgeon Atlantic, and Capt.

Singh who asserts he was then President of Ship Agencies who could be served in the district [Doc. # 18, Ex. "A" and "B"]) precludes a Rule B attachment. Local Admiralty Rule 7.02(a) provides that in an *in personam* action, a defendant shall be considered "not found within the district" if it cannot be served within the district as provided by the Federal Rules of Civil Procedure. The Advisory Notes to the Local Admiralty and Maritime Rules state that Section 7.02(a) "codifies the governing law of this circuit as set forth in *Labanca v. Ostermunchner,* 664 F.2d 65, 67 (5th Cir.1981)." [1] In *Labanca,* the Court established a two-prong test for determining whether a defendant can be found "within the district" for purposes of Supplemental Rule B(1). First, the Court must determine whether the defendant is present for personal jurisdiction purposes; in other words has the defendant engaged in sufficient activity or "minimum contacts" to warrant the exercise of personal jurisdiction. A defendant corporation is "found" in this district if it has recently conducted substantial commercial activity in this district and probably will do so in the future. *Oregon Lumber Export Co. v. Tohto Shipping Co.,* 53 F.R.D. 351, 352 (W.D.Wash. 1970). Ship Agencies has not proffered any evidence of business activity in the Middle District of Florida to counter plaintiff's representation in the Amended Verified Complaint that Ship Agencies could not be found in this district despite diligent search. Therefore the Court concludes that on this record Ship Agencies has not engaged in sufficient business activity in this district to be "found" in this district within the meaning of Supplemental Rule B(1), and that the first prong of the *Labanca* test has not been met.

■ It is only if the answer to the first question of "minimum contacts" is in the affirmative, that inquiry proceeds to the second level of whether defendant can be served in the district. Clearly, Local Admiralty Rule 7.02(a) addresses only the second prong of the *Labanca* test. Thus, counsel's amena-

bility to service, as well as the representations by Mr. O'Donnel and Captain Singh by affidavit that they were available to be served on the vessel (Doc. # 21), is insufficient to preclude Supplemental B attachment. This isolated and post-attachment presence of an officer for service within the district is **not** the type of "ongoing presence within the District which was intended under Supplemental Admiralty Rule B and Local Admiralty Rule 7.02(a)". *Triton Container International Limited, v. M/S, Itapage,* 774 F.Supp. 1349, 1351 (M.D.Fla.1990) (denying a motion to vacate wrongful arrest and attachment based in part on claims the defendant could be "found" within the district). See also *Fedcom v. Revelen, International,* 1993 WL 556449, 1993 A.M.C. 2435 (D.Me. 1993). Moreover, mere "after process" presence does not counter plaintiff's representations of due diligence in attempting to locate Ship Agencies in this district. If defendant's argument were accepted, maritime attachment could be avoided or rescinded simply by accepting service. Such is neither the intent nor the purpose of Supplemental Rule B. *Id.* at 2437 n. 1. Defendant may not, post-attachment, appoint agents for service in the district and defeat a writ of attachment. *Navieros Inter–Americanos v. M/V Vasilia Express,* 930 F.Supp. 699, 707 (D.Puerto Rico 1996).

On this record there is no evidence Ship Agencies had an office in this district; plaintiff's verified allegation that it exercised due diligence to attempt to locate Ship Agencies is unrefuted. Ship Agencies did not present any evidence of business activity in the district and the Court finds that the apparent presence of Mr. O'Donnel and Captain Singh is insufficient to establish presence within the meaning of Supplemental Rule B(1). Thus there is no evidence that Ship Agencies engaged in sufficient business activities in the district to establish the requisite minimum contacts for in personam jurisdiction; therefore at the time of the attachment defendant could not be "found within the district" and Supplemental B attachment was properly issued.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) the 11th Circuit adopted as precedent all decisions of the former 5th Circuit rendered prior to October 1, 1981.

### III. There was probable cause for the issuance of the attachment.

While the details of a post-attachment hearing are left to the Court's discretion, the "post-arrest hearing [2] is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond." [3] *Salazar v. Atlantic Sun*, 881 F.2d 73, 79–80 (3rd Cir. 1989); *Thypin Steel Company v. Certain Bills of Lading*, 1996 WL 223896 (S.D.N.Y. 1996).

Plaintiff has the burden under Supplemental Rule E(4)(F) to come forward with sufficient evidence to show there was probable cause for the arrest or attachment of the vessel. *Continental Insurance Co. v. Adriatic Tankers Shipping Co.*, 1995 WL 649942 (E.D.La.1995); *Newport News v. S.S. Independence*, 872 F.Supp. 262, 265 (E.D.Va. 1994). Despite being asked at the hearing, neither Ship Agencies nor Sturgeon Atlantic has suggested any other standard of review; the Court has therefore reviewed the record to determine if there was probable cause and/or reasonable grounds for the issuance of the attachment.[4]

The record reflects the Time Charter Agreement dated July 24, 1996 is between plaintiff and "M/V Ship Agencies on behalf of itself and the owner of the M/V 'Sturgeon Atlantic' (Owner)...." The thus defined "owner" then expressly represents that it is "the sole and exclusive owner of the above vessel; that Owner has full right and authority to enter into this agreement...." (Exhibit A to Amended Verified Complaint [Doc. # 8], p. 1). The contract further provides that notice to "Owner" is to be given to Ship Agencies at a Miami address.(*Id.* p. 8, 10).

The agreement does not mention Sturgeon Atlantic.

The contract was signed in duplicate. On one copy the signature for "owner" dated July 23, 1996 contains the handwritten notation "manager only". (*Id.* p. 11). The record further reflects that when disputes arose concerning Ship Agencies' performance under the contract, notice and demand was given to Ship Agencies with a copy to "S. Danoff" as required under the contract. Plaintiff's verified amended complaint alleges that Ship Agencies was the owner/managing owner of the Sturgeon Atlantic with the power to possess, control and charter said vessel. (Doc. # 8, Para.4).

After the vessel was attached, Sturgeon Atlantic, Ltd., a Grand Cayman corporation with no officers or directors within this district, filed a Claim of Owner, which claim specifically denied it was making a general appearance. The Claim of Owner was filed by the same counsel as represents Ship Agencies. (Docs.# 17, 30). The Affidavit of William O'Donnel represents that he is an "owner's representative for the vessel M/V Sturgeon Atlantic." The affidavit asserts that while the vessel was in Jacksonville, Captain Amrit Singh was the President of Ship Agencies and was amenable to service of process on behalf of both the vessel owner and Ship Agencies. Mr. O'Donnel further asserts Ship Agencies is a Florida corporation with a resident agent in Miami Beach, Florida and that he is authorized to accept service of process on behalf of Sturgeon Atlantic. (Doc. # 18, Ex. "B"). Captain Singh's affidavit asserts he is the captain of the Sturgeon Atlantic and the president of Ship Agencies, with its principal offices in Miami, and while the ship was in dry dock in Jacksonville, he was amenable to service on behalf of both the vessel owner and Ship Agencies and that he was

---

**2.** While this is a post-attachment case rather than a post-arrest case, the standards and procedures are the same. Supplemental Rule E(4)(f).

**3.** Neither Sturgeon Atlantic nor ship Agencies has requested the Court set a bond.

**4.** Cases are not clear whether the Court should makes its probable cause determination following a post-attachment hearing from the stand-

point of what the evidence was before the Court at the time of the original attachment or following evidence presented at the post-attachment hearing. This distinction makes no difference in this case, however, because the Court finds that, even after considering all the evidence proffered at the post-attachment hearing, there was and is probable cause for the attachment.

not served. (Doc. #18, Ex. "A"). In a separate declaration, Captain Singh states that Ship Agencies is a manager of a number of vessels, including the Sturgeon Atlantic, and that Ship Agencies is not the owner or managing owner of the vessel "nor does it have the right or power to possess, control or charter the vessel without the consent of the owner Sturgeon Atlantic, Ltd." Attached to his declaration is a copy of a certificate of British Registry which purports to be for the Sturgeon Atlantic; however, the Official Number of the vessel differs from that given in Paragraph 1 of the Time Charter Agreement. (Doc. #21). It is also unclear whether other of the vessel's technical criteria listed in the Time Charter Agreement is the same as in the certificate.

Additionally, although on the one hand asserting it was not a party to the Time Charter Agreement, Sturgeon Atlantic has now appointed an arbitrator in the underlying dispute pursuant to the terms of the Time Charter Agreement. (Docs. #18, Ex. "C"; #19). While the Court is not reaching issues of possible interlocking officers, directors or common stock ownership referenced by Sturgeon Atlantic's supplemental authority (Doc. #28), a matter reserved for later resolution either in arbitration or further proceedings in this Court, the Court does note that both Sturgeon Atlantic and Ship Agencies are represented by the same counsel. (Doc. #30). Finally, a certificate of insurance states the holder is Ship Agencies as agents to Sturgeon Atlantic, Ltd. (Doc. #30, unnumbered attachment).

The Court concludes there was both reasonable grounds and probable cause for the issuance of the attachment. At this juncture, without the amplification provided by discovery and proof, the evidence of ownership is conflicting; however, there is sufficient evidence in the record to uphold the validity of the attachment. Under the terms of the Time Charter Agreement, Ship Agencies is included in the definition of the "owner" which represents it has the right to enter into the contract; notice under the agreement is given to Ship Agencies; and the agreement does not mention Sturgeon Atlan-

tic. Moreover, Sturgeon Atlantic appointed an arbitrator under the terms of the Time Charter Agreement and gave notice of that appointment to plaintiff. If Sturgeon Atlantic was not a "party" to that agreement, the Court queries why it would govern itself according to the contract terms. The unauthenticated copy of a British registry as to the vessel "Sturgeon Atlantic" also contains some conflicting information. While discovery may illuminate the ownership issue, which cannot definitively be determined at this early stage of the proceedings, considering the facts as proffered, the Court finds the plaintiff has established probable cause and reasonable grounds for the issuance of the writ of attachment. Accordingly, it is hereby

**ORDERED:**

1. The Motion of Claimant/Owner, Sturgeon Atlantic, Ltd. to Show Cause why the attachment should not be vacated and the vessel released (Doc. #18) is **denied.** The Court's Order Directing the Issuance of Process of Attachment and Garnishment (Doc. #10) filed February 11, 1997 **shall remain in place until further Order of the Court.**

2. Plaintiff's Motion for Leave to Amend Amended Verified Complaint (Doc. #27), filed February 28, 1997 is **granted** and the Clerk is instructed to file the Second Amended Verified Complaint in Admiralty attached to the Motion. Plaintiff shall insure that proper service shall be made on both parties who will plead as advised to plaintiff's Second Amended Verified Complaint in Admiralty.

3. Plaintiff's Motion for Supplemental Process of Attachment and Garnishment (Doc. #24) filed February 28, 1997 is **deferred.** By March 28, 1997, the parties may file memoranda addressing the issue raised by Ship Agencies that the general appearance by Sturgeon Atlantic precludes the issuance of a supplemental writ of attachment, and also whether the request for supplemental attachment is moot in light of this Court's Order affirming the initial attachment.

4. Ship Agencies' Motion for Corporate Verification (Doc. #30) is **deferred** pending the expiration of plaintiff's response time.